# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1264 | **DATE** | June 4, 2003 |
| **CASE TITLE** | Amurol Confections Co v. Morris National, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion to disqualify defendant's counsel [7-1] is denied. It appears from the docket in this case that Mr. Chejfec has not formally withdrawn from his representation of Amurol. He is given leave to do so by June 18, 2003.

A status hearing is set for June 18, 2003, at 10:30 a.m.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| x | Notices MAILED by judge's staff. | U.S. DISTRICT COURT CLERK | JUN 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | 03 JUN -4 PM 4:31 | docketing deputy initials | 14 |
| | Mail AO 450 form. | | | |
| | Copy to _____ | FILED-ED TO | date mailed notice | |
| KAM | courtroom deputy's initials | Date/time received in central Clerk's Office | KAM mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMUROL CONFECTIONS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 1264 |
| ) | |
| MORRIS NATIONAL, INC. ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Before the court is plaintiff's motion to disqualify defendant's counsel. For the reasons stated below, the motion is denied.

### BACKGROUND

This is a breach of contract action in which plaintiff Amurol Confections Company ("Amurol") seeks over $900,000 for products that it alleges it sold and delivered to defendant Morris National, Inc. ("Morris") without receiving payment.

Plaintiff moves to disqualify defendant's counsel, the law firm of Katten Muchin Zavis Rosenman ("KMZR"). The basis for the motion is attorney Charles Chejfec's recent move to KMZR from his former firm, Seyfarth Shaw, which represents plaintiff.

The following facts are taken from the affidavits submitted by both plaintiff and defendant. In late December 2002, Morris first contacted KMZR in connection with the dispute in this lawsuit, and

in January 2003, Morris retained KMZR to represent it.[1] Alexander Vesselinovitch is the principal KMZR attorney handling the matter. Emily Henson is the other KMZR attorney assigned to the matter.

In early February, plaintiff Amurol retained Seyfarth Shaw to represent it in this proceeding, and filed suit on February 19. At that time, Mr. Chejfec was an associate at Seyfarth Shaw and one of two attorneys at the firm with primary responsibility for the Amurol matter and who entered an appearance on behalf of plaintiff. Mr. Chejfec participated in numerous privileged telephone conversations with plaintiff's in-house counsel and with other attorneys at Seyfarth Shaw regarding case assessment, strategy, valuation, and possible theories of recovery. He reviewed all of plaintiff's documents, performed legal research, and helped draft the complaint.

In March 2003, Mr. Chejfec began interviewing for a position at KMZR. Later that month, Mr. Chejfec accepted KMZR's offer of a position in the litigation department of its Chicago office. On March 18, Mr. Chejfec informed John O'Malley, the other attorney at Seyfarth Shaw who was working on the Amurol matter, that he had accepted a position at KMZR and would begin working there in early April. On March 31, Mr. O'Malley wrote Mr. Vesselinovitch to ask that KMZR withdraw as counsel for Morris. KMZR declined to

---

[1] On March 14, 2003, KMZR filed an appearance in this case on behalf of Morris.

withdraw, and Mr. Vesselinovitch told Mr. O'Malley that KMZR had implemented screening procedures.

On April 7, 2003, Amurol filed the instant motion seeking to disqualify KMZR from representing Morris pursuant to Rule 83.51.10 of the Local Rules of Professional Conduct of the United States District Court for the Northern District of Illinois. On April 9, 2003, Mr. Chejfec began working at KMZR.

## DISCUSSION

Amurol argues that KMZR is disqualified pursuant to Rule 83.51.10 of the Local Rules of Professional Conduct, the "Imputed Disqualification" provision. The relevant portion of the Rule states:

> When a lawyer becomes associated with a firm, the firm may not represent a person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer, or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless:
>
> (1) the newly associated lawyer has no information protected by [Local Rule] 83.51.6 or LR 83.51.9 that is material to the matter; or
>
> (2) the newly associated lawyer is screened from any participation in the matter and is apportioned no specific share therefrom.

Local Rule 83.51.10(b).

The burden is on the moving party to show facts necessitating disqualification. See Guillen v. City of Chicago, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). When appropriate, disqualification

protects the attorney-client relationship by ensuring that clients receive the undivided loyalty of their counsel. See id. At the same time, it is well-settled that disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) (quotation omitted). In addition to creating unnecessary delays, unwarranted disqualifications often deprive parties of their chosen legal advisor. See Guillen, 956 F. Supp. at 1421. The Seventh Circuit has instructed that "there obviously are situations where [disqualification motions] are both legitimate and necessary; nonetheless, such motions should be viewed with extreme caution for they can be misused as techniques of harassment." Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982).

The Seventh Circuit uses a three-part analysis to determine whether disqualification is warranted. First, the court must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If the court concludes that a substantial relationship does exist, it must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If the court concludes that this presumption has not been rebutted, it must then determine whether the presumption of shared confidences

has been rebutted with respect to the present representation. See Cromley v. Board of Educ., 17 F.3d 1059, 1064 (7th Cir. 1994).

KMZR does not contest that a substantial relationship exists between the subject matter of the prior and present representations; it is the identical subject matter--the litigation brought by Amurol against Morris. As a result, a presumption of shared confidences arises with respect to the prior representation. See Cromley, 17 F.3d at 1064. KMZR does not attempt to rebut the presumption that Mr. Chejfec was privy to confidential information from Amurol. Therefore, we must move to the third step of the analysis and ascertain whether KMZR has rebutted the presumption of shared confidences with respect to the present representation. The issue is whether KMZR has demonstrated that it established an effective screening procedure to block any disclosure of Amurol's confidences by Mr. Chejfec to any member or employee of KMZR.

Section (e) of Local Rule 83.51.10 lists the factors we should consider to determine whether Mr. Chejfec has been screened from participation in this matter:

> For purposes of this rule . . ., a lawyer in a firm will be deemed to have been screened from any participation in a matter if:
> (1) the lawyer has been isolated from confidences, secrets, and material knowledge concerning the matter;
> (2) the lawyer has been isolated from all contact with the client or any agent, officer or employee of the client and any witness for or against the client;
> (3) the lawyer and the firm have been precluded from discussing the matter with each other; and
> (4) the firm has taken affirmative steps to accomplish the foregoing.

- 6 -

Local Rule 83.51.10(e). Moreover, according to the Seventh Circuit,

> [t]he types of institutional mechanisms that have been determined to protect successfully the confidentiality of the attorney-client relationship include: (1) instructions, given to all members of the new firm, of the attorney's recusal and of the ban on exchange of information; (2) prohibited access to the files and other information on the case; (3) locked case files with keys distributed to a select few; (4) secret codes necessary to access pertinent information on electronic hardware; and (5) prohibited sharing in the fees derived from such litigation. . . . Other factors have been considered helpful in determining whether adequate protection of the former client's confidences has been achieved: the size of the law firm, its structural divisions, the "screened" attorney's position in the firm, the likelihood of contact between the "screened" attorney and one representing another party, and the fact that a law firm's and lawyer's most valuable asset is "their reputations for honesty and integrity, along with competence."

Cromley, 17 F.3d at 1065 (quotation omitted).

Mr. Chejfec and Mr. Vesselinovitch have both submitted affidavits.[2] Mr. Vesselinovitch states that in March 2003, upon learning that Mr. Chejfec was interviewing for a position at KMZR, he immediately took steps to screen Mr. Chejfec from the Amurol matter. He directed those who were going to interview Mr. Chejfec not to discuss or bring up the Amurol matter in any way during the interviews. Mr. Vesselinovitch adds that he himself did not recruit Mr. Chejfec to work at KMZR and did not conduct or participate in any interviews.

---

[2] "Uncontroverted affidavits are sufficient rebuttal evidence." Cromley, 17 F.3d at 1065.

Mr. Vesselinovitch also states that when Mr. Chejfec began working at KMZR on April 9, 2003, the firm took the following steps to ensure that Mr. Chejfec was screened from all confidences, secrets, and material knowledge relating to this matter: (1) e-mails were sent to all KMZR lawyers and employees at every level in every office, including Mr. Chejfec, directing that the Amurol matter must not be discussed with Mr. Chejfec; (2) all files concerning the Amurol matter are kept in the offices occupied by the only two lawyers assigned to the matter (Mr. Vesselinovitch and Ms. Henson), and those offices are locked every evening; and (3) Mr. Chejfec was warned not to discuss any confidences relating to the matter with any KMZR lawyer or employee. Mr. Vesselinovitch avers that the screening mechanisms have been completely effective and that no confidences have been divulged or received, and that the screening will continue. Mr. Chejfec will be precluded from sharing any billing credit or receiving any other form of credit or compensation arising from the Amurol matter. In addition, Mr. Chejfec has been isolated from, and will continue to be isolated from, all contact with Morris, any agents, officers, or employees of Morris, and any witnesses for or against Morris. Mr. Chejfec's affidavit essentially affirms much of what Mr. Vesselinovitch states.

We conclude that KMZR has rebutted the presumption of shared confidences with respect to the present representation by

describing the timely establishment of a screening process and the details of that process. Plaintiff contends that a screening procedure does not overcome "the undisputable conflict of interest and the strong appearance of impropriety." (Reply at 2.) We disagree. When one attorney changes sides, the presumption of shared confidences is rebuttable, see Cromley, 17 F.3d at 1066, and KMZR has successfully rebutted the presumption by demonstrating carefully constructed safeguards. Such screening mechanisms do indeed overcome the appearance of impropriety. See id.

Plaintiff also emphasizes that KMZR is not defendant's "regular outside counsel" and that KMZR "has been representing Morris in this case for less than three months." (Reply at 3.) We believe that these factors should be given little, if any, weight. Plaintiff also points out that Mr. Chejfec will be working in the same office and in the same practice group as Mr. Vesselinovitch and Ms. Henson. However, this case is distinguishable from the cases cited by plaintiff in which the newly associated attorney moves to a very small firm (where is it is questionable if screening mechanisms will be effective). According to KMZR's web site, there are approximately 280 attorneys in the Chicago office and approximately 60 attorneys in Mr. Chejfec's practice group (Litigation). Given these circumstances, we see no reason why the screening mechanisms to which Mr. Vesselinovitch and Mr. Chejfec have attested will not succeed.

## CONCLUSION

Plaintiff's motion to disqualify defendant's counsel is denied.

It appears from the docket in this case that Mr. Chejfec has not formally withdrawn from his representation of Amurol. He is given leave to do so by June 18, 2003.

A status hearing is set for June 18, 2003, at 10:30 a.m.

DATE:     June 4, 2003

ENTER:    _____
          John F. Grady, United States District Judge